FILED
IN CLERKS OFFICE
2022 JAN 10 PM 12: 24
U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Crim. No. 1:19-cr-10459-RWZ-21 |
| v. | Hon. Rya W. Zobel |
| ANGEL RODRIGUEZ, | |
| Defendant. | |

## MOTION FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE OR, ALTERNATIVELY, FOR A RECOMMENDATION FOR MAXIMUM RRC (HALFWAY HOUSE) PLACEMENT

NOW COMES Defendant Angel Rodriguez ("Rodriguez"), acting pro se, and moves this Honorable Court for Order granting compassionate release/reduction in sentence, or, alternatively, for an Order recommending to the Federal Bureau of Prisons that Rodriguez receive maximum (12 months) placement in a Residential Re-Entry Center ("RRC").

In support of this motion Rodriguez states as follows.

### I.
### Background

In a sweeping nine-count, 62-person indictment, Rodriguez was charged with one count of Conspiracy to Conduct Enterprise Affairs through a Pattern of Racketeering Activity, in violation of 18 U.S.C. § 1962(d). On May 20, 2021, Rodriguez was sentenced to a 44-month term of imprisonment, to be followed by three years of supervised release. He did not appeal. However, he now seeks early release based upon the extraordinary and compelling circumstances articulated herein.

## II.
## Discussion

### Legal Standard

With the changes made to the compassionate release statute by the First Step Act, prisoners may now, following the exhaustion of all available administrative remedies, petition the Court for compassionate release/reduction in sentence (prior to the FSA, only the Bureau of Prisons ("BOP") could seek such an order from the Court). See 18 U.S.C. § 3582(c)(1)(A)(i). Moreover, it is now within the sole province of the Court to determine whether there are extraordinary and compelling circumstances that would warrant a modification of the prisoner's sentence.

Concerning exhaustion, a defendant's administrative application for compassionate release is deemed exhausted if he has exhausted all available remedies, "or the lapse 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). That said, Rodriguez represents to this Honorable Court that he submitted a request for compassionate release to his Unit Team at USP Canaan, which was denied on October 19, 2021, and that he then submitted a written request to the warden on November 22, 2021, which to date as not been answered. See Unit Team Denial and Request to Warden, attached hereto as Exhibit A. Thus, because 30 days have elapsed since receipt of his Request for Compassionate Release/Reduction in Sentence to the Warden of USP Canaan, Rodriguez has exhausted all available remedies and thus the matter is ripe for judicial adjudication.

Extraordinary and Compelling Circumstances

A defendant's sentence may be modified under 18 U.S.C. § 3582 (a)(1)(A) only upon a satisfactory showing of extraordinary and compelling circumstances. Congress, however, has never defined this rather ambiguous term of art; they left that up to the United States Sentencing Commission.

The Commission created several categories of qualifying reasons that could warrant compassionate release: (A) medical conditions of the defendant, including terminal illness and other serious conditions and impairments; (B) age of the defendant, for those 65 and older with serious deterioration related to aging who have completed 10 years or 75% of the term of imprisonment; (C) family circumstances, where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver; and (D) other reasons, when the Director of the BOP determines there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." United States Sentencing Guidelines, § 1b1.13, Application Note 1(A). The Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." Id. at Application Note 2.

Section 603 of the First Step Step Act, of course, somewhat changed this matrix, in that now a defendant need not rely upon the rather parsimonious Bureau of Prisons to file a motion for compassionate release, and it is now the Court, not the BOP, who

3

determines, in the first instance, whether there exists extraordinary and compelling reasons to modify a defendant's term of imprisonment. See United States v. Trenkler, 2021 U.S. Dist. LEXIS 87567 (D.Mass., May 6, 2021)(Courts have broad discretion to determine what constitutues an extraordinary and compelling reason under § 3582(c)(1)(A)).

However, not only must the Court find the existence of extraordinary and compelling reasons before granting a motion for compassionate release, but any reduction must be consistent with applicable Sentencing Commission policy statements and with the sentencing factors outlined in 18 U.S.C. § 3553(a). See United States v. Gandia-Maysonet, 2021 U.S. Dist. LEXIS 11604 (D.P.R., Jan. 21, 2021).

Against this legal backdrop, Rodriguez respectfully submits that his reasons for seeking compassionate release/ a reduction in sentence are truly, objectively, and indisputedly extraordinary and compelling. First, but certainly not his primary reason for seeking compassionate release, are Rodriguez's health issues and the attendant risks that Covid-19 poses as a direct result of those health issues. Second, the exigent circumstances relevant to the care of Rodiriguez's children. And third, and most importantly of all, is Rodriguez's dangerously deteriorating mental health conditions precipitated by the draconian (but wholly necessary) restrictions on inmate movement as a result of the Covid-19 novel coronavirus (Rodriguez places this reason above all others because if his mental health deteriorates beyond the point of repair he will never be able to be a caregiver to his children).

All of these reasons are directly linked to the pernicious, insidious, and invidious Covid-19 novel coronavirus, a virus that very compelling evidence suggests had been leaked, almost certainly inadvertantly, from the Wuhan Institute of Virology, in Wuhan, China, where genetic biologists were conducting gain-of-function research, at least in part through funding from the National Institute of Health of the United States. (In this instance, "gain-of-function research" means genetically altering a virus by, for example, making it more deadly and/or transmissible, presumably with the goal of determining how best to combat a similar organic super virus.) In other words, the best available evidence suggests (a) that Covid-19 was at least partially man-made (or at least artificially augmented), (b) that the NIH at least partially funded this ill-advised research, and (c) that thus the entire pandemic, which has caused so much death, grief, and profound suffering, likely could have been avoided.

That said, Rodriguez will now turn to the three above-referenced reasons that he solemnly suggests warrant compassionate release.

A. Underlying Health Issues

Not only does Rodriguez have a documented history of diabetes, high blood pressure, and asthma, but he also was shot several times in two separate shooting incidents, one in 2008, in which he was shot in the back, and one 2014, in which he was shot in the chest. As a result of theses shootings Rodriguez suffered a collapsed lung and significant liver and kidney damage. Further, as the Court may remember, Rodriguez has already contracted Covid once, and he

5

represents to the Court that he continues to suffer from what has been colloquially termed "long Covid." Just Rodriguez's asthma alone places him at a significantly heightened risk of dying from Covid-19 should he contract the virus again. But collectively, all of his health issues make dying from the virus quite likely. Indeed, it is truly a miracle that he didn't die the first time he was struck with that vicious virus.

At all events, in light of Rodriguez's significant health issues, to keep him confined in what is essentially a petri dish with guard towers would, in this writer's humble opinion, be the picture of deliberate indifference, and Rodriguez knows first-hand that the Honorable Judge Zobel is constitutionally incapable of being deliberately indifferent to the suffering of others. (More on that directly.) See Asthma Documentation, Exhibit B.

B. Family Circumstances

Covid-19 is an equal opportunity virus. But the impact of the virus has not affected everyone equally. Indeed, people of color and economically disadvantaged persons have been hit the hardest. And persons of color who are economically disadvantaged the hardest of all.

But let's not stop there. Let's sprinkle in a dash of mental illness, a pinch of emotional distress, and a dollop of substance abuse. Now we have the complete sad portrait of the mother and sole caregiver to Rodriguez's two beautiful children. And it is not that Mom is a bad person or that she is purposely neglectful; rather she is just one of the countless, forgotten, invisible single mothers caught up in the unforgiving fell clutches of extreme

poverty—public housing, food insecurity, failing public school for her children, and absolutely no family support system. She is like a tiny unmoored dingy caught up in a great and devastating tidal wave. And when the children come of age they will, as if they have no agency at all, follow in these forlorn footsteps. And society, if it notices at all, will but briefly lament the pitiable human condition. Oh, there will be the rare teacher, probation officer, or judge who truly cares and will do what she can to help. But in the end she, too, will feel overwhelmed and overmatched by the seemingly immutable forces that mercilessly batter the dingies of the world and push them to and fro on the cold rough seas like flotsom and jetsam.

But against this Kafkaesqe dystopian drama there are the success stories, the Dickensian waif who breaks the bonds of cyclical poverty and despair and goes on to live a healthy and productive life. And what is more, the children of this erstwhile waif will, like flowers in a garden cleared of weeds, have a full and fair opportunity to achieve the American Dream, and the cycle of privation will be no more. It is this hope that propels the downtrodden forward.

But what is the spark that ignites these types of success stories? Is is God? Government? Community? It can be one or all of these things. Or it can be a simple seemingly insignificant gesture—perhaps an act of mercy where none seems warranted. Judge Zobel, in sentencing Rodriguez, granted just such a mercy when she actually by God recognized him and showed empathy. It was the first time in his life that he actually felt <u>seen</u> by a society

7

member. When Judge Zobel talked about Rodriguez's hardscabble circumstances and then granted a roughly two-and-a-half year downward variance she essentially said, "I recognize your humanity and see your worth." Uneducated though he may be, the significance of this gesture was not lost on Mr. Rodriguez. Rather than going to prison and wheeling and dealing and engaging in prison politics, Rodriguez has maintained exemplary conduct and has continued to educate himself and perfect his plans to give his children the life that he never had. He knows what he has to do, and there are no forces strong enough to deter him.

But his children need him <u>now</u>. Just as it only takes one gesture or event to change the trajectory of a person's life in a positive way, so too can a gesture or event change the trajectory in a negative way. Maybe it's boosting a pack of gum from the local market, or smoking that first cigarette. Every single solitary second that Rodriguez is away from his two children is a second that they become that much more entrenched on a path to poverty and despair. Rodriguez is finally awake, and it is killing him that he cannot immediately take the steps necessary to help his family. Instead he languishes in a loud locked down unit, which brings us to Rodriguez's next point.

C. Rodriguez's Mental Health

The term "living hell" is so overused that it is virtually meaningless.

Virtually.

For a person suffering from PTSD, bipolar disorder, and depression, being locked in a prison housing unit with over a

8

hundred other men who scream all day every day from 6:00am to 10:00pm, with no access to any outside recreation, a library, or any structured educational programs, is a living hell. The Court, in sentencing Rodriguez, acknowledged the increased burden placed on prisoners in the Age of Covid, stating that the burdens were more onerous than they ever were before, "except in the Middle Ages[.]" Str. 18. But as amazingly informed as the Court's opinion was in this regard, it unfortunately did not even scratch the surface of the suffering that the mentally ill are subjected to as a result of restrictive conditions of confinement imposed as a result of Covid-19. It is torture, and there is not a speck of hyperbole in that statement. The Federal Bureau of Prisons is not <u>intentionally</u> torturing people, but that fact does nothing to temper the sharp edge of the suffering.

It <u>is</u> a living hell.

Indeed—and read these words with the import with which they are writting—the only thing keeping Rodriguez alive is his two children. And this statement is not born of depression or sadness, but of a need to end the torture.

This torture alone is truly an extraordinary and compelling reason that would warrant compassionate release.

<u>Consistent with Sentencing Commission Policy</u>

A reduction in Rodriguez's sentence would in no way be inconsistent with Sentencing Commission policy. Indeed, in light of the above, a reduction would decidedly be <u>consistent</u> with said policy, or at least <u>applicable</u> policy.

9

## The § 3553(a) Factors

Likewise, a sentence reduction in the case sub judice would do nothing to offend the factors deliniated in 18 U.S.C. § 3553(a). Indeed, a reduction would best serve those factors, specifically in terms of providing adequate medical treatment. Put plainly, the BOP cannot adequately treat prisoners with severe mental illness in a United States Penitentiary in the Age of Covid. Thus if we have any expectations of Rodriguez getting out and being a productive member of society and a conscientious caregiver to his two children, then he must be extricated from his present situation immediately. And that does not mean that the Court must let him go completely free. Indeed, the Court could convert the remainder of Rodriguez's sentence to a halfway house or to home confinement.

At all events, to the extent that the Court finds that Rodriguez failed to demonstrate extraordinary and compelling circumstances warranting compassionate release or a reduction in his sentence, Rodriguez would respectfully request that the Court at least recommend to the BOP that he receive twelve months halfway house placement. This would, of course, only be a recommendation that the BOP, as they are wont to do, could completely disregard. But Rodriguez prays for more concrete relief. Give him a chance, and he will prove worthy of your mercy. But do not do it for him. Do it for his children, and his children's children.

Do it to help break the cycle.

### III.
### Conclusion

Rodriguez is legally eligible for compassionate release and/or a reduction in his sentence. Indeed, one Court in this District has granted a motion for compassionate release based upon the defendant's deteriorating mental health and the exacerbation of that deterioration as a result of Covid-related conditions of confinement. See United States v. Fields, 2021 U.S. Dist. LEXIS 150218 (D.N.H., Aug. 9, 2021).

But more importantly, he is worthy of compassionate release. When he is released—whenever that may be—he is going to work tirelessly to provide a better life for his wife and children. He now knows how to break the cycle, and nothing can stop him from doing so. Nothing else matters.

WHEREFORE, in light of the above, Rodriguez prays that this motion will be granted.

Respectfully submitted,

*Angel Rodriguez* (signature)
Angel Rodriguez
Reg. No. 01352-509
U.S. Penitentiary Canaan
P.O. Box 300
Waymart, Pennsylvania 18472

Date: 01/03/2022